MATTHEW J. SHIER (SBN: 72638)
JEREMY W. KATZ (SBN: 119418)
PINNACLE LAW GROUP LLP
425 California Street, Suite 1800
San Francisco, CA 94104
Telephone: (415) 394-5700
Facsimile: (415) 394-5003

Attorneys for
TV-32 DIGITAL VENTURES INC.,
Debtor and Debtor-in-Possession

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| In re:<br><br>TV-32 DIGITAL VENTURES INC., a California corporation,<br>Tax ID: 20-1198608<br><br>Debtor. | Case No. 09-58098 ASW 11<br><br>Chapter 11<br><br>**DECLARATION OF BOOKER T. WADE RE STATUS OF CHAPTER 11 CASE**<br><br>Date: July 19, 2010<br>Time: 1:45 p.m.<br>Courtroom: 3020, 3rd Floor<br>The Honorable Arthur S. Weissbrodt |

TO: THE HONORABLE ARTHUR S. WEISSBRODT, UNITED STATES BANKRUPTCY JUDGE:

I, Booker Wade, hereby declare that I am personally familiar with the following facts, that they are true of my own knowledge except as to those matters stated upon information and belief, as to which, I believe them to be true; if called as a witness herein, I would testify competently thereto.

1. I submit this declaration as TV-32 DIGITAL VENTURES INC., Debtor and Debtor-in-Possession (the "Debtor") Chapter 11 Status Conference Statement.

2. The Debtor filed a voluntary chapter 11 bankruptcy petition on September 23, 2009, on the eve of Sonoma National Bank's foreclosure sale of Debtor's 21,500 square foot

commercial real property located at 1010 Corporation Way, Palo Alto, California 94303 (APN 116-01-025).

3. At the hearing on May 3, 2010, which included consideration of the Debtor's Disclosure Statement, the Motion of Arlene Stevens for the Appointment of a Chapter 11 Trustee and Status Conference, the Court further continued the matters to June 18, 2010, on the representation that it was likely that the State Court would, by the continued date, determine the issue of who owns and has authority to control Debtor.

4. On May 28, 2010, Judge Silver ruled that Mr. Wade had the corporate authority to file this case.

5. At the last status hearing, the parties agreed to explore listing of the Debtor's real property in an effort to aggressively market the property and to obtain a sale at or close to the appraised value which the parties believe to be approximately $4.3 million. However, given the views of the various brokers consulted, the parties have been unsuccessful in this regard. Under the circumstances, the Debtor wishes the Court to consider the following in relation to a determination of how this case should proceed.

    a. Background

        i. This proceeding is a result of a related state proceeding involving property division claims and counter-claims by Arlene Stevens [Stevens] and me arising out of our 25-year business and non-marital personal relationship. The competing claims were ostensibly resolved via a global Settlement Agreement entered into on January 22, 2009 [Settlement], mediated before Santa Clara County Superior Court Presiding Judge Jaime Jacobs-May. The Settlement assigned some assets to Stevens and some to me. Of the two most valuable assets, one – the Woodside residence – was assigned to Stevens, while the other – the commercial office building at 1010 Corporation Way, Palo Alto - was assigned to me. Other assets including a residential condo in Palo Alto, a permit to construct a new television broadcast station in Topeka, Kansas [Channel 12] and three wireless cell telephone licenses issued by the Federal Communications Commission were to be sold and the proceeds shared. Under the Settlement, the

PINNACLE LAW GROUP LLP
425 CALIFORNIA STREET
SUITE 1800
SAN FRANCISCO, CA 94104
(415) 394-5700

5181.001     2     CHAPTER 11 STATUS CONFERENCE STATEMENT/ DECLARATION OF BOOKER T. WADE

Case: 09-58098    Doc# 68    Filed: 07/12/10    Entered: 07/12/10 15:17:03    Page 2 of 10

Presiding Judge designated a JAMS neutral, the Hon. Richard Silver, to arbitrate 23 multiple and specifically enumerated potential disputes arising during the implementation of the Settlement. Settlement contract formation disputes were reserved to the Court.

      ii. Litigation over the Settlement now continues in four different courts. That is because the Settlement imploded almost immediately. First, there was the FCC permit for Channel 12 in Topeka. We paid $800,000 for the permit at an FCC auction. Both Stevens and I at the Settlement mistakenly assumed that the permit, then held by an entity controlled by my niece and nephew on behalf of the next generation of the Stevens and Wade families, was not in immediate danger of expiration and there was time to list and sell it with a media broker on the open market. This would have allowed a buyer additional time to construct. In fact, the permit was subject to imminent forfeiture for failure to construct timely. The only option to save the permit under FCC rules was to sell the permit to a new or re-organized entity that the FCC could grant additional time to construct. The arbitrator ordered the permit sold to Stevens. Because Stevens previously had failed to construct and then forfeited another FCC permit for a new FM station in Arkansas, my niece/nephew, not being parties to the Settlement, declined to sell the permit to Stevens, fearful she would forfeit it also. The second event imploding the Settlement involved $400,000 in a certificate of deposit at First Republic Bank in Palo Alto. Upon our separation in March 2007, Stevens then controlled $1.7 million in cash and securities. Previously Stevens and I had pledged to use these funds and their income if necessary to pay the debt service to Sonoma Bank and the SBA on the Corporation Way office building. At the Settlement, there were significant disputes as to what remained of the $1.7 million since separation. Stevens represented she had only "about $3,000" in a single bank account at Comerica Bank in Palo Alto. A few months following the Settlement, a bank statement intended for Stevens from First Republic Bank was inadvertently delivered to me. Under Court orders to explain the previously undisclosed bank account, Stevens confirmed that at the Settlement she failed to disclose she then controlled the $400,000 in the remaining contested funds. Stevens still failed to continue servicing our pledge and practice of servicing the debt from these funds. As a result, the loans for

PINNACLE LAW GROUP LLP
425 CALIFORNIA STREET
SUITE 1800
SAN FRANCISCO, CA 94104
(415) 394-5700

5181.001   3   CHAPTER 11 STATUS CONFERENCE STATEMENT/ DECLARATION OF BOOKER T. WADE

Case: 09-58098   Doc# 68   Filed: 07/12/10   Entered: 07/12/10 15:17:03   Page 3 of 10

Sterling Bank and the SBA went into default. The foreclosure and this proceeding followed. Stevens used part of the $400,000 to cure a default on the Woodside property which she later sold, receiving $645,000 in net proceeds, now in escrow. Unlike Stevens, I would have used my share of these funds to continue paying Sterling Bank and the SBA and this proceeding would have been unnecessary.

      b. Stevens' Challenge

Stevens previously represented in this proceeding that she is the sole director-officer of the Debtor and that I lacked authority to file the Chapter 11 proceedings. That representation was false and Stevens knew it. The arbitrator concluded that under the Settlement I am the 100% owner of the Debtor and the property. At the hearing before the arbitrator, Stevens never even argued that I was not the 100% owner nor did she argue that she is or was a director or officer. Her only argument was that I should prospectively forfeit my ownership interests because the real estate market was in turmoil, she was at risk on her personal guarantee and I was reluctant to sell the property.

      c. June Status Conference

         i. At the status conference last month, Stevens and I agreed to list the property with a broker for sale at an increment or so over the appraised price of $4.3 million. Thereafter, Stevens provided me the names of her three suggested brokers. I discussed marketing plans with all three. Two came to inspect the property. They advised me as follows.

         ii. Eric Anderson

Eric did an evaluation and inspection of the building on June 22, 2010. His bottom line was that $4.3 is unrealistic and not marketable. He said there have only been four sales in the county in the last 12 months. The lack of commercial lending he sees as the main culprit. He said there is minimalist financing available. He said a likely purchase price is between $2.7 and $3.1 million. He states that Palo Alto office vacancy factors have improved from a 2009 low of 14% and is now at 8%, driven by Santa Clara county technology companies' sales to China and India.

5181.001     4     CHAPTER 11 STATUS CONFERENCE STATEMENT/ DECLARATION OF BOOKER T. WADE

PINNACLE LAW GROUP LLP
425 CALIFORNIA STREET
SUITE 1800
SAN FRANCISCO, CA 94104
(415) 394-5700

Case: 09-58098    Doc# 68    Filed: 07/12/10    Entered: 07/12/10 15:17:03    Page 4 of 10

### iii. Steve Botto

Steve bleakly said the market "just sucks." He sees a sale price on an urgent sale basis at $125 to $135 per square foot or $2.68 to $2.9 million. A wildcard he said is a unique user/owner that falls in love with "this nice R&D flex building in Palo Alto" might pay $150sf or $3.2 million. He also said even getting TV 32's acquisition cost [$3.75 million] is "pie in the sky today". The problem he identified as a general lack of commercial credit. While there he says is "a trickle" of credit for well qualified investors who put up 35% to 50% in equity, this precludes the traditional leveraging, yielding little demand for sales. He stated there has been a pickup of activity in the last 60 days in the leasing market which now permits securing rents at breakeven, but the sale market lags. He believes it will be one more year of real pain and additional value declines, before the sale market picks up in 18 months.

### iv. Tom Doglio

Tom is more optimistic than the other two brokers. He declined to give a price "for now." A couple of days later, he left me a voice message stating he believe $200 per square foot is "very easy" to secure. Tom said Palo Alto is an excellent market, although the building [closer to Mountain View] is not in an established neighborhood. He also said the building is fairly typical and conforming and should sell "readily if priced right." He believes tenant income will drive the value but never sought or received current tenant income and did not know expected income ranges for Palo Alto. He agreed that the likely buyer is an owner/user. He also agrees that the market is almost non-existent and may get worse over the next year, but that things "could turn on a dime". He boasts of a recent sale he made 8 blocks away of an old church site of 2.5 acres that he sold for $9.5 million to a developer who plans to tear down the church/school and build 30 units of housing. He agrees that lending is a problem and that the buyer will have to be a very high net worth person who is very qualified and with huge available cash. He also said it may have to be an all-cash buyer.

///

///

v.  Gregg Delong (My broker)

My broker has been attempting to sell the building for the last 12 months. Gregg Delong generally agrees with Eric Andersen and Tom Doglio that in the current distorted market, in the absence of commercial credit, the only likely sales are those with steeply discounted fire sale prices. Delong advises that Tom Doglio and his San Jose-based company specialize in multi-family/apartment transactions and do not have significant experience with the Palo Alto commercial office market.

d.  Appraisal Value

The last appraisal completed six months ago, placed the fair market value of the property at $4.350, 000. At the hearing last month, counsel for the bank advised that the bank had ordered an updated appraisal and that the preliminary report she had received indicated the updated value would again be about $4.3 million. I understand that the updated report will actually show the updated value to have declined by nearly a baffling one million dollars. Such a drop is inconsistent with other reports that the Palo Alto market has stabilized and office vacancies have declined. The appraiser who inspected the property last month is different from the same person who appraised the property for the bank on two separate prior occasions. I am inclined to believe the bank has gone shopping for the result it prefers.

e.  Arbitrator's "Recommendation"

i.  The arbitrator concludes that "…any [re-organization] plan that does not accomplish the removal of Ms. Stevens as guarantor or protect her from any action on the guarantee would be contrary to and in violation of the agreement of the parties." That is not true. There are no provisions in the Settlement regarding bankruptcy or protection to Stevens on her guarantees. There were discussions at the Settlement as to possible terms that both Stevens and I would indemnify each other for any damages or a breach. But, Stevens' counsel specifically excluded these from being binding, stating that he wanted first to see the indemnification terms in writing. He was obligated to reduce the Settlement to writing but never did so. I note that seven days after the Settlement, I began the process of applying to Sonoma Bank to refinance the first

PINNACLE LAW GROUP LLP
425 CALIFORNIA STREET
SUITE 1800
SAN FRANCISCO, CA 94104
(415) 394-5700

5181.001

6

CHAPTER 11 STATUS CONFERENCE STATEMENT/
DECLARATION OF BOOKER T. WADE

Case: 09-58098   Doc# 68   Filed: 07/12/10   Entered: 07/12/10 15:17:03   Page 6 of 10

mortgage, completing application forms and appearing for interviews. However, Stevens' counsel, invoking banking privacy laws, directed Sonoma Bank not to discuss refinancing with me. On my protest, the arbitrator effectively endorsed Stevens' directive, concluding that I could respond to the bank's inquiry but could not initiate or seek refinancing information from the bank.

    ii.    As the arbitrator notes, I objected to his assertion of jurisdiction to decide some issues. The settlement agreement designated the arbitrator to resolve specifically enumerated disputes. The Settlement did not vest in the arbitrator authority to make "recommendations" to this Court or anyone. I note the arbitrator did not cite any provision in the Settlement or anywhere else granting him such authority. I have asked the state court to reverse the position of the arbitrator.

    iii.    In November 2008, Vendalvo Inc., a software firm with Fortune 500 clients and located across the street from the office building, offered to lease all the available space in the office building at then market rates. Vendalvo proposed to upgrade and renovate the entire building to Class A status. I also received interest from my bank, the Private Bank of the Peninsula of Palo Alto, to refinance the two existing mortgages and provide "cash out" financing in excess of $1 million. The Vendalvo lease would have produced a $7.2 market value for the building. The refinancing would have released Stevens from both of her personal guarantees. I forwarded the proposal to Stevens, offering her $1 million in cash to endorse the proposal and resolve disputes as to the building. Stevens never even responded to the offer.

    f.    Stevens' Breach of Settlement

    i.    The arbitrator, concluding that it is a condition of the Settlement, "recommends" that the building be sold immediately to protect Stevens. When making the recommendation, the arbitrator had before him uncontested facts that Stevens was in breach of the Settlement requiring her to perform other conditions. The Settlement required her to pay 60% of the carrying costs of the Palo Alto condo beginning in January 2009. But, to date some 18 months later, Stevens has not paid any portion of the carrying costs. As a result, the condo is now in foreclosure proceedings. The Settlement also required Stevens to sell the FCC wireless license

PINNACLE LAW GROUP LLP
425 CALIFORNIA STREET
SUITE 1800
SAN FRANCISCO, CA 94104
(415) 394-5700

for areas nearby Portland, Oregon. She failed to do so. As a result, on May 13, 2010, she forfeited the license. The arbitrator concluded it was "not appropriate" to address her non-performances.

### g. Disqualification

Stevens' counsel – presumably in an effort to discredit me - has advised this Court that I disqualified the Presiding Judge. The representation is false. The Presiding Judge, on her own motion, voluntarily made disclosures that beginning contemporaneously with the Settlement and continuing until March 20, 2010, she had been participating in employment discussions with JAMS, the arbitrator's employer. This was based on California law which prohibits such employment discussions under circumstances where she was enforcing the JAMS arbitrator's orders. I did file a peremptory challenge to the first substitute judge because he candidly conceded he would not issue any orders that would antagonize his "boss", the Presiding Judge.

### h. Protecting All Creditors

I am informed that the predominant difficulty in selling the building at its fair market value is the historic exogenous dislocations in the current economy, particularly the disruptions in the commercial credit markets. I understand that a sale in the current market will be a distress sale that would protect Sterling Bank but impair all other creditors, Stevens and me. I also understand that a sale at a price that protects Sterling Bank, the SBA, unsecured creditors and Stevens is not realistic for the next two to three years. That is why I request the Court to proceed with my reorganization plan. My position in the state court action is that the Settlement is void and should be vacated for multiple reasons and that a jury should decide the ownership issues of all the assets, including the sale proceeds from the Woodside residence now in escrow. I am entitled to 50% of those proceeds. I am appealing the court's decision declining to vacate the Settlement. If I am unsuccessful with the appeal and pending the appeal, I am willing to amend the plan to provide Stevens with a lien on any of her funds attached by Sterling Bank.

///

///

PINNACLE LAW GROUP LLP
425 CALIFORNIA STREET
SUITE 1800
SAN FRANCISCO, CA 94104
(415) 394-5700

5181.001　　　　　　　　　8　　　　　CHAPTER 11 STATUS CONFERENCE STATEMENT/
DECLARATION OF BOOKER T. WADE

Case: 09-58098　Doc# 68　Filed: 07/12/10　Entered: 07/12/10 15:17:03　Page 8 of 10

6. Based on the foregoing and other related circumstances, the Debtor wishes to amend the existing plan to conform to Judge Silver's ruling and to resolve objections of Sterling Savings Bank (successor to Sonoma National Bank).

7. The Debtor submits that 30 days would be a reasonable time within which to file its amended plan and disclosure statement.

I declare under penalty of perjury pursuant to the laws of the United States that the foregoing is true and correct.

Executed this 12th day of July 2010, at Palo Alto, California.

/s/ Booker T. Wade
Booker T. Wade

PINNACLE LAW GROUP LLP
425 CALIFORNIA STREET
SUITE 1800
SAN FRANCISCO, CA 94104
(415) 394-5700

# CERTIFICATE OF SERVICE

I am employed in the office of a member of the bar of this Court in the City and County of San Francisco, at whose direction this service was made. I am over the age of 18 and not a party to the within action. My business address is 425 California Street, Suite 1800, San Francisco, California 94104.

On July 12, 2010, I served the documents described as:

DECLARATION OF BOOKER T. WADE RE STATUS OF CHAPTER 11 CASE

on the interested parties in this action by placing [ ] the original [X] true copies thereof enclosed in sealed envelopes addressed as follows:

| | |
|---|---|
| TV-32 DIGITAL VENTURES INC.<br>c/o Booker T. Wade<br>605 Forest Avenue<br>Palo Alto, CA 94301 | Andrew Zighelboim<br>450 West Santa Clara Street<br>San Jose, CA 95113<br>azighelboim@collierparrish.com |

The Honorable Arthur S. Weissbrodt
United States Courthouse, Room 3020
280 South First Street
San Jose, CA 95113-3099

**Attention: CHAMBERS COPIES**

[X] U.S. MAIL: Service was accomplished by placing the document(s) listed above in a sealed envelope with postage thereon fully prepaid, in the United States mail at San Francisco, California, addressed as set forth above.

[X] BY E-MAIL/NEF: Service was accomplished through the Notice of Electronic Filing ("NEF") for parties and counsel who are registered ECF Users.

| | |
|---|---|
| Office Of The United States Trustee<br>USTPRegion17.SJ.ECF@usdoj.gov,<br>ltroxas@hotmail.com | William J. Healy on behalf of Creditor Arlene Stevens<br>whealy@campeaulaw.com |

Rachel K. Stevenson on behalf of Creditor
Sterling Savings Bank
rnunes@abbeylaw.com

I declare under penalty of perjury under the laws of the United States of America, that the foregoing is true and correct. Executed on July 12, 2010, at San Francisco, California.

/s/ Heather Pruitt
HEATHER PRUITT

PINNACLE LAW GROUP LLP
425 CALIFORNIA STREET
SUITE 1800
SAN FRANCISCO, CA 94104
(415) 394-5700

5181.001     10     CHAPTER 11 STATUS CONFERENCE STATEMENT/ DECLARATION OF BOOKER T. WADE

Case: 09-58098    Doc# 68    Filed: 07/12/10    Entered: 07/12/10 15:17:03    Page 10 of 10