MATTHEW J. SHIER (SBN: 72638)
JEREMY W. KATZ (SBN: 119418)
PINNACLE LAW GROUP LLP
425 California Street, Suite 1800
San Francisco, CA 94104
Telephone: (415) 394-5700
Facsimile: (415) 394-5003

Attorneys for
TV-32 DIGITAL VENTURES INC.,
Debtor and Debtor-in-Possession

# UNITED STATES BANKRUPTCY COURT

## NORTHERN DISTRICT OF CALIFORNIA

547    SAN JOSE DIVISION

| | |
|---|---|
| In re: | Case No. 09-58098 ASW 11 |
| TV-32 DIGITAL VENTURES INC., a California corporation, Tax ID: 20-1198608 | Chapter 11 |
| | Petition Filed: September 23, 2009 |
| Debtor. | **DEBTOR'S SECOND AMENDED DISCLOSURE STATEMENT** |
| | **Disclosure Hearing:** |
| | **Date:** **September 24, 2010** **Time:** **2:00 p.m.** **Place:** United States Courthouse, Room 3020 280 South First Street San Jose, CA 95113-3099 The Honorable Arthur S. Weissbrodt |

DEBTOR'S SECOND AMENDED DISCLOSURE STATEMENT

1.    INTRODUCTION

TV-32 DIGITAL VENTURES INC. ("Debtor," "TV-32" or "Company") hereby submits the following SECOND AMENDED Disclosure Statement concerning Debtor's SECOND AMENDED Chapter 11 Plan (as it may be amended or modified hereafter, including, but not limited to, the SECOND AMENDED Chapter 11 Plan, the "Plan") in the within Chapter 11 case,

PINNACLE LAW GROUP LLP
425 CALIFORNIA STREET
SUITE 1800
SAN FRANCISCO, CA 94104
(415) 394-5700

28

5181.001

1

**DEBTOR'S SECOND AMENDED DISCLOSURE STATEMENT**

1 | for the reorganization of the Debtor's estate, pursuant to the provisions of Title 11 of the United

2 | States Code. Reference is made to the Plan, which is being filed simultaneously herewith.

3 | Except as expressly provided or unless the context otherwise requires, all capitalized

4 | terms not otherwise defined shall have the meanings set forth in the list of definitions, attached as

5 | Exhibit A to the Plan. Any term used herein or in the Plan that is not defined in the Plan, but is

6 | defined in the Bankruptcy Code or the Bankruptcy Rules, will have the meaning set forth in the

7 | Bankruptcy Code or the Bankruptcy Rules.

8 | 2.    PRELIMINARY INFORMATION

9 | THE INFORMATION CONTAINED IN THIS DISCLOSURE STATEMENT (THE

10 | "DISCLOSURE STATEMENT") IS INCLUDED HEREIN FOR PURPOSES OF SOLICITING

11 | ACCEPTANCES OF THE DEBTOR'S CHAPTER 11 PLAN (THE "PLAN") AND MAY NOT

12 | BE RELIED UPON FOR ANY PURPOSE OTHER THAN TO DETERMINE HOW TO VOTE

13 | ON THE PLAN.

14 | ALL CREDITORS ARE ADVISED AND ENCOURAGED TO READ THIS

15 | DISCLOSURE STATEMENT AND THE PLAN IN THEIR ENTIRETY BEFORE VOTING TO

16 | ACCEPT OR REJECT THE PLAN. PLAN SUMMARIES AND STATEMENTS MADE IN

17 | THIS DISCLOSURE STATEMENT ARE QUALIFIED IN THEIR ENTIRETY BY

18 | REFERENCE TO THE PLAN AND THE EXHIBITS ANNEXED TO THE PLAN AND THIS

19 | DISCLOSURE STATEMENT. THE STATEMENTS CONTAINED IN THIS DISCLOSURE

20 | STATEMENT ARE MADE ONLY AS OF THE DATE HEREOF, AND THERE CAN BE NO

21 | ASSURANCE THAT THE STATEMENTS CONTAINED HEREIN WILL BE CORRECT AT

22 | ANY TIME AFTER THE DATE HEREOF. IN THE EVENT OF ANY CONFLICT BETWEEN

23 | THE DESCRIPTION SET FORTH IN THIS DISCLOSURE STATEMENT AND THE TERMS

24 | OF THE PLAN, THE TERMS OF THE PLAN SHALL GOVERN.

25 | THIS DISCLOSURE STATEMENT HAS BEEN PREPARED IN ACCORDANCE

26 | WITH SECTION 1125 OF THE UNITED STATES BANKRUPTCY CODE AND RULE

27 |

PINNACLE LAW GROUP LLP
425 CALIFORNIA STREET
SUITE 1800
SAN FRANCISCO, CA 94104
(415) 394-5700

28 | 5181.001    2    DEBTOR'S SECOND AMENDED
DISCLOSURE STATEMENT

3016(B) OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE AND NOT NECESSARILY IN ACCORDANCE WITH FEDERAL OR STATE SECURITIES LAWS OR OTHER NON-BANKRUPTCY LAW. THIS DISCLOSURE STATEMENT HAS BEEN NEITHER APPROVED NOR DISAPPROVED BY THE SECURITIES AND EXCHANGE COMMISSION (THE "SEC"), NOR HAS THE SEC PASSED UPON THE ACCURACY OR ADEQUACY OF THE STATEMENTS CONTAINED HEREIN. PERSONS OR ENTITIES TRADING IN OR OTHERWISE PURCHASING, SELLING OR TRANSFERRING SECURITIES OR CLAIMS OF THE DEBTOR SHOULD EVALUATE THIS DISCLOSURE STATEMENT AND THE PLAN IN LIGHT OF THE PURPOSE FOR WHICH THEY WERE PREPARED.

3.      PURPOSE OF THE DISCLOSURE STATEMENT

The purpose of this disclosure statement is to provide adequate information to enable a hypothetical reasonable investor typical of the holders of claims or interests in the case to make an informed judgment about the Plan.  The Debtor has provided all of the information contained in the statement except where otherwise expressly indicated.  The Debtor is informed and believes that all information herein contained is accurate and reliable to the best of its knowledge.

4.      GENERAL DESCRIPTION OF THE DEBTOR AND ITS BUSINESS

4.1      Debtor commenced this case on September 23, 2009 (the "Petition Date"), by filing its voluntary petition for relief under chapter 11 of the Bankruptcy Code.  Debtor is now operating its real property and managing its financial affairs as debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  This Court has jurisdiction over this case pursuant to 28 U.S.C. §§ 1334 and 157.  Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

4.2      Debtor TV-32 DIGITAL VENTURES INC. is a California corporation which occupies and manages the Real Property.

/ / /

PINNACLE LAW GROUP LLP
425 CALIFORNIA STREET
SUITE 1800
SAN FRANCISCO, CA 94104
(415) 394-5700

5181.001                    3                    DEBTOR'S SECOND AMENDED
                                                 DISCLOSURE STATEMENT

Case: 09-58098    Doc# 74-1    Filed: 08/09/10    Entered: 08/09/10 09:34:26    Page 3 of 32

4.3     Debtor was forced to file this case to stay a foreclosure of the Real Property by the holder of the first deed of trust.

4.4     Booker T. Wade formed TV-32 as a California corporation in 2004. Mr. Wade is now the sole shareholder and officer of the Debtor.

4.5     The Debtor filed this case on September 23, 2009, on the eve of Sonoma National Bank's foreclosure sale of the Real Property - a 21,500 square foot commercial real property located at 1010 Corporation Way, Palo Alto, California 94303 (APN 116-01-025).

4.6     On October 8, 2009, Debtor filed its Schedules A, B, D, E, F, G and H and Statement of Financial Affairs (see Docket No. 14, erroneously listed as "amended" schedules).

4.7     Pinnacle Law Group LLP was appointed as the Debtor's general bankruptcy attorneys pursuant to an order of the Court entered on October 16, 2009 (see Docket No. 16).

4.8     Booker T. Wade was designated Debtor's responsible individual pursuant to an order of the Court entered on October 16, 2009 (see Docket No. 17).

4.9     On October 20, 2009, Debtor filed its Amended Schedules A, B, D, E, F, G and H and Statement of Financial Affairs (see Docket No. 19).

4.10    On October 22, 2009, Debtor attended the Initial Debtor Interview conducted by Brian Martinson, United States Trustee.

4.11    On October 27, 2009, Debtor filed its further Amended Schedules D and E (see Docket No. 23).

4.12    The First Meeting of Creditors was held and concluded on October 28, 2009.

4.13    On December 22, 2009, Debtor filed its Disclosure Statement and Chapter 11 Plan (see Docket Nos. 31 and 32).

4.14    On January 27, 2010, Debtor filed its First Amended Disclosure Statement and Chapter 11 Plan (see Docket No. 48).

/ / /

/ / /

PINNACLE LAW GROUP LLP
425 CALIFORNIA STREET
SUITE 1800
SAN FRANCISCO, CA 94104
(415) 394-5700

5181.001                                    4                    DEBTOR'S SECOND AMENDED
DISCLOSURE STATEMENT

Case: 09-58098     Doc# 74-1     Filed: 08/09/10     Entered: 08/09/10 09:34:26     Page 4 of 32

4.15    The Debtor has attempted but has been unsuccessful in an effort to reach agreement with the holder of the 1st deed of trust and Arlene Stevens on a consensual plan or other disposition of this case.

5.    THE DEBTOR'S SECOND AMENDED PLAN - FACTUAL BACKGROUND AND MEANS FOR THE PLAN'S EXECUTION

BACKGROUND

5.1    In 2005, TV 32 Digital Ventures Inc. (Debtor) acquired the 21,500 square foot commercial office building located at 1010 Corporation Way, Palo Alto, California, through the efforts of Booker Wade [Wade] and Arlene Stevens [Stevens]. The building was intended to be and became the headquarters of Minority Television Project Inc., licensee of KMTP TV 32, a non-commercial educational public television station licensed by the Federal Communications Commission that produces, broadcasts and distributes multicultural and multi-lingual television programming to 1.8 million homes in the nine-county San Francisco Bay Area via cable, satellite and over-the-air. As originally proposed to lenders, the business plan of the Debtor was to build and operate a television digital media center offering the building and its digital equipment for classes and training to other media entities and professionals. Following their separation and a resultant contest between Wade and Stevens as to ownership of the Debtor, Wade acquired 100% ownership and control of the Debtor and building in January 2009.

5.2    The building is located adjacent to Highway 101 on 1.1 acres and includes 51 parking spaces. The building had been used for ten years by Stanford University Hospital as a nursing continuing education center. Stanford remained a tenant for nine months following the acquisition by the Debtor and paid the Debtor $2.35 per square foot triple net. Prior to Stanford's occupancy, for 15 years the building was leased to Wells Fargo Insurance Group and its predecessors. The configuration of the building includes a front portion 15,000 square foot newer two-story office structure and a one-story 6,500 square foot older rear portion of laboratory-warehouse space and classrooms.

PINNACLE LAW GROUP LLP
425 CALIFORNIA STREET
SUITE 1800
SAN FRANCISCO, CA 94104
(415) 394-5700

5181.001        5        DEBTOR'S SECOND AMENDED
DISCLOSURE STATEMENT

The Debtor paid $4,491,439 million for acquisition of the building and the start up of the Debtor, financed by a first mortgage of $2,023,750 million from Sonoma Bank [now Sterling Bank, sometimes referred to herein as "Sterling"], a second mortgage of $1,416,625 million from the Small Business Administration [SBA] and $1,051,064 in cash equity and working capital from the Debtor. The financing package included funding for the acquisition and installation in the building of digital broadcast equipment. Stevens provided Sonoma Bank and SBA with personal guarantees. With the advent of the current recession, the business plan of TV 32 dissipated, compounded by the dissolution of the Wade-Stevens partnership-relationship. A default on both the first and second mortgages followed.

5.3     Following the default, Sonoma Bank noticed a foreclosure sale. Thereafter, the Debtor filed for protection under Chapter 11 on September 23, 2009. The Debtor filed its initial Disclosure Statement and a Plan of Reorganization on December 22, 2009. On December 23, 2009, Stevens filed a motion (a) maintaining that she was the sole officer-director of the Debtor, that the Debtor's Chapter 11 petition was not authorized by her and (b) requesting the Court to appoint a trustee to sell the property. Concluding that a question was presented as to the authority to file the Chapter 11 petition, the Court directed the Debtor and Stevens to seek from either the state court, or the arbitrator designated by the state court, clarification as to whether Wade had the authority to file the petition on behalf of the Debtor. The arbitrator issued a decision declaring that the Settlement Agreement between Wade and Stevens vested in Wade sole ownership of the Debtor and the building. On July 19, 2010, the Court directed the Debtor to file an amended plan of reorganization encompassing updated developments. On July 30, 2010, Sterling filed a motion for relief from the stay.

SUMMARY OF THE SECOND AMENDED PLAN OF REORGANIZATION

5.4     The Second Amended Plan (sometimes referred to as the "Amended Plan") is to commence upon the effective date of the plan (thirty days after confirmation, herein the "Effective Date"), paying to Sterling and the SBA monthly contract interest on account of their

PINNACLE LAW GROUP LLP
425 CALIFORNIA STREET
SUITE 1800
SAN FRANCISCO, CA 94104
(415) 394-5700

5181.001                              6                    **DEBTOR'S SECOND AMENDED DISCLOSURE STATEMENT**

Allowed Secured Claims. The Debtor intends to fully lease the building, initially at below market rates, escalating thereafter to market rates, and within three years, refinance/retire the existing debt and/or sell the property. KMTP TV will lease, as of the Effective Date, all remaining vacant space not leased by others. The capacity of KMTP TV to support the lease will be enhanced by new committed guaranteed revenues, grants from the federal government and subsidies from the City and County of San Francisco and County of Alameda.

5.5     The Amended Plan is a return to the original business plan proposed to Sonoma Bank and SBA in 2005 when the Debtor purchased its property: operation of a digital media center. Other elements of the Amended Plan are: (a) the formation of a New Company, College of Palo Alto, a California for-profit corporation, as the ultimate parent of a Reorganized TV 32 Digital Ventures Inc.; (b) paying 100% of Allowed Secured Claims over the next three years; (c) paying 10% on account of Allowed Unsecured Claims; and, (d) refinancing the existing debt and/or selling the property within three years.

5.6     The basis of the Amended Plan is the stabilization and indications of a recovery in the Palo Alto office market reflected in two trends. Employment hiring and declining office vacancies are leading indicators of an expanding economy. In Palo Alto, industrial-office vacancy rates have fallen from a 2009 high of 14.5% to approximately 7.7% with the announcement on July 22, 2010, by AOL Inc. that it will move its headquarters and its 560 employees from Mountain View and that it has signed a lease for 225,000 square feet of office space in Palo Alto. This follows the leasing in the second quarter of this year by Tesla Motors Inc. of 350,000 square feet in Palo Alto for space for the production of its electric vehicles and corporate headquarters. This is bolstered by an announcement on July 28, 2010, from Google Inc. that its hiring of new employees has returned to 2007 pre-recession levels. In the first six months of this year, Google added 10% to its workforce in the Bay Area. The Debtor believes that the 50% absorption of office space in Palo Alto and the hiring by Google are precursors of a recovering (albeit haltingly) and stabilizing economy, and a recovering Palo Alto office market.

PINNACLE LAW GROUP LLP
425 CALIFORNIA STREET
SUITE 1800
SAN FRANCISCO, CA 94104
(415) 394-5700

DEBTOR'S SECOND AMENDED
DISCLOSURE STATEMENT

Thus, the Amended Plan is premised upon the Debtor leasing vacant space in its office building. Funding to support the reorganization will come from borrowings, leasing revenues, indirect government grants and subsidies.

COMPONENTS OF THE PLAN

A.  New Company

5.7  Wade will cause to be formed College of Palo Alto, a new California for-profit corporation with its principal location at the Debtor's property. Majority shares in the entity will be owned by Wade. Upon consummation of the Amended Plan, all assets of the Debtor will be transferred to College of Palo Alto.

B.  Interest Payments

5.8  The Debtor's Promissory Note with Sterling provides for an adjustable fifth year interest rate at 7.2% as of August 1, 2010 adjusted periodically based on the 11th District Cost of Funds Index of the Federal Home Loan Bank of San Francisco. As of August 1, 2010, with the index rate at 1.8%, the adjusted contract interest rate is now down from its first year rate to the minimum rate of 6.2% or $11,418 monthly. The Debtor will commence paying this amount to Sterling as of the effective date of the Amended Plan (thirty days following confirmation, sometimes referred to herein as the "Effective Date"). The Promissory Note with the SBA provides for a fixed interest rate at 5.5%. Based upon Sterling's June 2010 appraisal, the value of the SBA collateral is $417,237. Debtor will commence contract interest payments to the SBA of $1,912 monthly beginning on the Effective Date.

C.  Leasing of Building

5.9  KMTP TV currently occupies a portion of the building. KMTP TV is the nation's smallest public television station by size and revenues. Like all public stations and other small businesses, it has been battered by the Great Recession. KMTP TV currently lacks the capacity to lease additional space. However, as detailed in Section 5, starting no later than January 2010, the revenues of KMTP TV will be enhanced from multiple sources, enabling KMTP TV to lease

PINNACLE LAW GROUP LLP
425 CALIFORNIA STREET
SUITE 1800
SAN FRANCISCO, CA 94104
(415) 394-5700

**DEBTOR'S SECOND AMENDED
DISCLOSURE STATEMENT**

additional and increasing building space.

KMTP TV will lease from the Debtor in varying amounts over the next three years all the additional space remaining in the building that others do not lease. Starting in November 2010, Sezmi Corporation of Belmont ("Sezmi") will provide KMTP TV with additional revenues which will be used to support the expanded lease. Sezmi markets and distributes digital television receivers; digital broadcast channels, cable program channels, on-demand movies and internet broadband services to consumers on a subscription basis. The Sezmi equipment has been installed at the Debtor's premises and is operational. Program testing is in progress. Essentially, Sezmi is a wireless competitor to cable television operators. Now operating in the Los Angeles televisions market, the company launches its subscription services in the San Francisco television market in November 2010.

D.      Refinancing or Sale

5.10    On or before thirty six months from the Effective Date, contemplating that the property is fully leased at market rents, the Debtor will obtain new financing on or a sale of the property, thereby facilitating of payment in full of the Allowed Secured Claims of the Class B Creditors and a 10% dividend on the Class C Allowed Unsecured Claims.

FEASIBILITY FACTORS

5.11    The Amended Plan relies substantially upon lease revenues from KMTP TV. The reliance by KMTP TV is primarily upon revenues from Sezmi; secondarily upon grants from the Corporation for Public Broadcasting; and on a tertiary basis from revenues from expanded program offerings.

5.12    Primary Source

Spectrum Lease: The primary source of enhanced revenues for KMTP TV will be from Sezmi. Founded in 2003, Sezmi is backed by the venture capital firms of Advanced Equities, Inc., Morgenthaler Ventures, Omni Capital Group, TD Fund, and Legend Ventures. In May 2010, KMTP TV and Sezmi executed an agreement to lease to Sezmi six megabits of the KMTP

PINNACLE LAW GROUP LLP
425 CALIFORNIA STREET
SUITE 1800
SAN FRANCISCO, CA 94104
(415) 394-5700

5181.001                                    9                    DEBTOR'S SECOND AMENDED
                                                                DISCLOSURE STATEMENT

Case: 09-58098    Doc# 74-1    Filed: 08/09/10    Entered: 08/09/10 09:34:26    Page 9 of 32

TV digital broadcast spectrum. Sezmi will use the spectrum for mobile internet access and to distribute on-demand movies and several of the twenty most popular cable program channels, likely including CNN, Bravo, TNT and MTV. The Sezmi equipment required to activate the service has been installed at the building in June 2010. The equipment is operational and program testing has begun. Other stations in the Bay Area providing spectrum to Sezmi for distribution of other cable program channels are KCSM TV, Channel 54, San Mateo and KRON TV, Channel 4, San Francisco. Best Buy stores in the Bay Area will market the Sezmi services. Under the spectrum lease, Sezmi will pay KMTP TV the greater of a monthly minimum or twenty-four cents per subscriber plus a share of its local advertising revenues. Using Best Buy projections of digital receiver sales, Sezmi projects that the KMTP TV annual revenue share will escalate from $326,400 in 2011 to $1.2 million by 2015.

     5.13    Secondary Source

     Government Grant: Alternative or additional support to KMTP TV to support the expanded lease with the Debtor will come from the Corporation for Public Broadcasting ("CPB"), a Congressionally funded entity that annually provides Community Service Grants to public television stations for their basic operations, including occupancy expenses. Congress has authorized annual appropriations through fiscal 2014. In fiscal 2010, CPB distributed $210 million to 183 public television stations. In the Bay Area for the latest reported year, KRCB, Santa Rosa; KCSM, San Mateo; and KQED, San Francisco, received Community Service Grants of $453,400, $631,838 and $3,474,355, respectively. The statutory minimum base grant is $443,000.

     KMTP TV previously has not been eligible for Community Service Grants because it provided overlapping service of the other three stations. On June 21, 2010, the Acting Chief Executive Officer of America's Public Television Stations Inc., the industry trade-lobbying group representing all 183 public television stations, recommended to CPB's grant reform group, that KMTP TV be given grandfather status as to the grant program because of its 15-year unique

PINNACLE LAW GROUP LLP
425 CALIFORNIA STREET
SUITE 1800
SAN FRANCISCO, CA 94104
(415) 394-5700

5181.001

10

DEBTOR'S SECOND AMENDED
DISCLOSURE STATEMENT

status among public stations in providing multicultural and multilingual program diversity to under-served audiences. On August 27, 2010, the grant reform group is expected to formally urge CPB to include KMTP TV in the grant program. Because CPB last year formally announced its intent to include program and audience diversity as criteria as a part of its Program Differentiation Incentive in all its future grant programs, CPB is expected to accept the recommendation. KMTP TV projects that it will receive approximately $450,250 beginning in the first quarter 2011.

     5.14    Tertiary Sources

Space Leasing: The College of Palo Alto, to be incorporated upon confirmation of the plan, will lease existing and unused classroom space in the building offering instruction in digital media beginning with the Spring Semester in January 2011. Other space will be leased to other entities.

Expanded Programming: With the industry's conversion to a digital format in June 2009, KMTP TV now has the capacity to broadcast up to ten channels of programming, up from one pre-digital. KMTP TV will use this expanded spectrum capacity for leasing to Sezmi (as described above) and to expand its programming. KMTP TV will create and broadcast five new 24/7 program channels:

Channel 33.2: "I am……(Pan African),"

Channel 33.3: "I am……(Asian),"

Channel 33.4: "I Do!"  (weddings),

Channel 33.5: "I live!"  (health); and

Channel 33.6: "I Ride!" (bicycling)

These channels, now in production, will provide the opportunity for additional revenues. These activities will require additional space requirements to be supported as follows.

/ / /

/ / /

PINNACLE LAW GROUP LLP
425 California Street
Suite 1800
San Francisco, CA 94104
(415) 394-5700

5181.001              11           **DEBTOR'S SECOND AMENDED DISCLOSURE STATEMENT**

Local Government Support: Funding will come from the City and County of San Francisco and the County of Alameda. In December 2009, KMTP TV entered into an agreement with the City and County of San Francisco as a part of the City's Jobs Now project, funded by the U.S. Treasury Department as a part of the Troubled Assets Relief Program or bank bailout program. Under the agreement, the City and County of San Francisco is reimbursing KMTP TV 100% of all compensation and payroll costs paid [except health insurance] for four previously unemployed San Francisco residents. KMTP TV has hired three such staffers who now are producing and marketing the programs, including "I do!" wedding programs. The fourth person hired is detailed to organize digital media classes on behalf of KMTP TV and College of Palo Alto. Also, KMTP TV has an agreement with the County of Alameda, which like San Francisco, will reimburse KMTP TV for its payroll costs. That staffer produces programming for the "I do!" channel. The job subsidy program currently is authorized by Congress through September 30, 2010. Upon its return from the summer recess on September 13, 2010, Congress is expected to extend the program for an additional year. If Congress fails to vote to extend the program, KMTP TV will place its subsidized employees on leave pending receipt of the CPB grant funds expected in January 2011. If Congress extends the program, KMTP TV will hire an additional 16 employees in marketing and production to enhance further its products and revenues.

STERLING RISKS AND PROTECTION

5.15     Collateral Value

In March 2009, Sterling retained Pacific Appraisers of Santa Cruz to make an appraisal of the property. On April 10, 2009, Ryan Whitelaw and Brier Basilico of Pacific Appraisers submitted their report placing a $4.73 million value on the property, noting specifically the negative impacts of the current recession. Eight months later, Sterling again retained Pacific Appraisers to make another appraisal of the property and in December 2009, the same two appraisers issued a report placing a $4.3 million value on the property. In the latter report, the same two appraisers again specifically noted the economic contagion and minuscule market data.

PINNACLE LAW GROUP LLP
425 CALIFORNIA STREET
SUITE 1800
SAN FRANCISCO, CA 94104
(415) 394-5700

5181.001                          12                          DEBTOR'S SECOND AMENDED
                                                             DISCLOSURE STATEMENT

In June 2010, Sterling announced it had commissioned a third appraisal. This time the appraisal was made from another company, Colliers International of San Jose. Joel Jungen inspected the property on June 9, 2010 and determined the value of the property to be $2.8 million - $2.15 million if the property were to be sold within a 180 day period. Sterling provided a copy of this most recent appraisal to the Debtor, attached to its request for relief from the stay. The Amended Plan is premised upon this reduced value of $2.8 million and a liquidation value of $2.15 million in the event of a forced sale within 180 days.

### ALLOWED SECURED CLAIMS - ANALYSIS

| | |
|---|---|
| **Value of Collateral** | **$2,800,000** |
| **Property Tax** | **$69,423** |
| **Sterling Claim** | **$2,313,340** |
| **SBA Collateral Value** | **$417,237** |

When coupled with the attached funds ($645,500),[1] Sterling's equity cushion in the property of approximately $400,000 provides it adequate protection of its secured claim.[2]

5.16    Sterling's Levy

With the acquisition of the building in 2005, Stevens executed a personal guarantee of the Debtor's debt instruments in favor of Sonoma Bank. Wade and Stevens also pledged to Sonoma Bank to secure the mortgage debts with their then joint assets, including the cash equity that was used to purchase their Woodside residence. Given the default by the Debtor, in February 2010, the Bank filed a breach of contract action on the personal guarantee in Sonoma County Superior Court against Stevens. Stevens failed to respond and the court entered a default. The Sonoma County court granted an order permitting the Bank to attach the contested $646,500 in proceeds

---

[1] See next section.
[2] While the Settlement Agreement assigned the Woodside property and its proceeds (the "Attached Funds") to Stevens, the California Court of Appeals is now considering whether to vacate the Settlement Agreement given that Stevens is in breach and for other reasons. Stevens did not file any opposition to the request to vacate the Settlement Agreement. With only Wade's pleadings before it, the Court of Appeals has taken the matter under submission. State statute requires the court to issue a decision and an opinion with ninety days of July 20, 2010, *i.e.* by October 20, 2010.

PINNACLE LAW GROUP LLP
425 CALIFORNIA STREET
SUITE 1800
SAN FRANCISCO, CA 94104
(415) 394-5700

5181.001                                        13                          DEBTOR'S SECOND AMENDED
                                                                            DISCLOSURE STATEMENT

from the sale of the Woodside residence (the "Attached Funds"). Although the Settlement Agreement modified the Wade-Stevens joint economic relationship, the Settlement Agreement specifically provided that the debt commitments to Sonoma Bank were not modified, absent the Bank's consent. Given that the Debtor lacks the right to preclude actions against or propose distribution of the funds, the Debtor submits that Sterling should hold the Attached Funds pending consummation of the Plan herein.

CONTINGENT AND LEGAL FACTORS

### 5.17    Settlement Agreement

On June 17, 2010, the Santa Clara County Superior Court denied Wade's request to invalidate and vacate the Settlement Agreement. On July 7, 2010, Wade filed with the California Court of Appeal, a Petition for Writ of Mandate requesting that Court to review and reverse the denial order and direct the lower court to either invalidate the Settlement Agreement or vacate lower court orders enforcing the Settlement Agreement, including the order directing the Clerk of the Superior Court to execute a Quitclaim Deed on behalf of Wade transferring Wade's 50% interest in the Woodside property to Stevens who thereafter sold the property.

Stevens defaulted on filing an opposition to the Writ Petition. If the appellate court grants Wade's request(s), ownership of 50% of the proceeds attached by the Sonoma court would revert to Wade who would use the funds to make the interest payments detailed in Section 3.2.

In his response to the Court's reference as to the question of the ownership of the Debtor and the building, the settlement arbitrator in addition to declaring Wade as the 100% owner, also concluded that as a condition of his ownership, Wade had an obligation to protect Stevens from legal action by Sterling. Wade maintains that nothing in the Settlement Agreement so provides. Wade is seeking review of the arbitrator's decision.

### 5.18    Rossi Hamerslough Action

On June 3, 2010, Stevens' counsel filed an action in Santa Clara County Superior Court asserting that his firm's lien filed in March 2010 as to any Stevens funds was superior to the

PINNACLE LAW GROUP LLP
425 CALIFORNIA STREET
SUITE 1800
SAN FRANCISCO, CA 94104
(415) 394-5700

5181.001

14

**DEBTOR'S SECOND AMENDED
DISCLOSURE STATEMENT**

attachment lien filed by Sterling in 2005.  This action should have no impact on the Amended Plan except to the extent of the amount of the Attached Funds which will ultimately enure to the benefit of Sterling or the SBA.

THE GREAT RECESSION

5.19    Commencing in 2007, the U.S. economy entered a historic financial crisis the press has labeled the Great Recession.  The crisis triggered a financial liquidity shortfall in the global banking system resulting in the collapse of large financial institutions, the bailout of banks by national governments and steep downturns in stock markets around the world.  In many areas, the housing market also suffered, resulting in millions of foreclosures and prolonged vacancies. It is considered by many economists to be the worst financial crisis since the Great Depression of the 1930s.  It contributed to the failure of key businesses, declines in consumer wealth estimated in the trillions of dollars, substantial financial commitments incurred by governments, and a significant decline in economic activity.  Unprecedented governmental intervention is credited with precluding a global depression.  The collapse of the global residential housing market, which peaked in 2006, caused the values of securities tied to real estate pricing to plummet, damaging financial institutions.  Questions regarding bank solvency, declines in credit availability, and damaged investor confidence negatively impacted the stock market.  Economies worldwide slowed during this period as credit tightened and international trade declined.  Governments and central banks responded with unprecedented fiscal stimulus, monetary policy expansion and institutional bailouts.  The Great Recession historically speaking has been a unique unforeseen financial contraction beyond the control of the Debtor.

The consensus view of economists is that generally the worse is over but that significant risks remain for the U.S. and world economy over the 2010–2011 periods.  Nearly all have been affected by the financial crisis.  This includes the interruption of the implementation of the Debtor's original business plan.  It also included putting Sterling at risk of receivership, a result averted earlier this year with an infusion of bank bailout funds, new equity and the Bank's own

PINNACLE LAW GROUP LLP
425 CALIFORNIA STREET
SUITE 1800
SAN FRANCISCO, CA 94104
(415) 394-5700

5181.001                    15                    DEBTOR'S SECOND AMENDED
                                                  DISCLOSURE STATEMENT

reorganization. The forbearance of the SBA from collection efforts is an effort by the Administration to assist in stabilizing the market. With a degree of stabilization returning to the economy and to the Palo Alto commercial real estate market, the Debtor will return to the implementation of its original (and updated) business plan previously endorsed by Sterling, the SBA and Stevens.

BUSINESS AND ECONOMIC ASSUMPTIONS

5.20    General Assumptions

The Debtor is informed and believes that the general economy will continue its halting recovery over the next three years sufficient to fully lease and/or sell the property. KMTP TV will lease up sufficient to cover contract interest only payments until the property is otherwise fully leased. The Debtor will lease space at less than market value sufficient to cover interest payments and operating expenses.

5.21    Central Revenue Assumptions - Rents

The Debtor places primary and substantial reliance on KMTP TV rent revenues. The central assumptions are that Sezmi's revenue projections are reasonably valid. This in turn assumes that the assumptions made by Best Buy Inc. as to the sale of digital receivers are reasonable. The Debtor believes that Best Buy is exceptionally qualified to make its projections, given that Best Buy Inc. is North America's number-one specialty retailer of consumer electronics, personal computers, entertainment software and appliances with 180,200 employees and 1,025 stores in the United States and an additional stores 3,011 stores in Canada, Mexico, China, and nine European countries.

An alternative central assumption is that CPB will grandfather KMTP TV in six months. Given that that KMTP TV is the only public stations with a multicultural-multilingual format and given CPB's newly announced policy decision to encourage program and audience diversity, the Debtor believes its reliance on KMTP TV receiving CPB funding is reasonable.

/ / /

PINNACLE LAW GROUP LLP
425 CALIFORNIA STREET
SUITE 1800
SAN FRANCISCO, CA 94104
(415) 394-5700

5181.001                                    16                        DEBTOR'S SECOND AMENDED
                                                                      DISCLOSURE STATEMENT

5.22    Operating Expenses

The Debtor's assumes that its expenses will remain substantially at current levels over the next three years.  Its two largest expenses are utilities and the salary of a single marketing employee.  While the utilities expenses are not reasonably within Debtor's control, those expenses have been substantially the same for the last two years.  The expenses assumptions include increases in the second and third year.  The salary expense is likely to dissipate upon fully leasing the building.  To encourage additional tenants, the Debtor will complete some tenant upgrades and improvements.  Because there are more prospective tenants looking for smaller spaces than larger spaces, the 7,500 square foot second floor will be divided into three separate units.  Open space on the first floor has already been divided into a smaller suite.  A new digital media studio is now under construction.  Additionally, the Debtor will cause the redecoration of public and common spaces.

5.23    Financial Statements

The Debtor attaches hereto, marked "Exhibit A," the following financial statements: Statement of Projected Revenues, Year 1, Year 2 and Year 3 and Projected Cash Flow Statements, Year 1, Year 2 and Year 3.

6.    CURRENT FINANCIAL INFORMATION

Post-Petition Financial Data/Monthly Operating Reports

Attached hereto, marked "Exhibit B" is a copy of the claims register in this case indicating all claims of which the Debtor is aware with the exception of the SBA Class B3 Claim.  The Debtor disputes the Arlene Stevens claim and the amount of the property tax claim filed by the County of Santa Clara.

The Debtor has timely filed monthly operating reports with the Court.  They show the following case to date activity, through June 30, 2009:

/ / /

/ / /

PINNACLE LAW GROUP LLP
425 CALIFORNIA STREET
SUITE 1800
SAN FRANCISCO, CA 94104
(415) 394-5700

5181.001                                          17                        DEBTOR'S SECOND AMENDED
                                                                              DISCLOSURE STATEMENT

Case: 09-58098    Doc# 74-1    Filed: 08/09/10    Entered: 08/09/10 09:34:26    Page 17 of 32

| Gross Revenue | $50,505 |
|---|---|
| Expenses | $16,038 |
| Net Cash Flow | $34,467[3] |

7.     CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS; IMPAIRMENT

7.1  Classification.  The following is a designation of the classes of claims and interests in the plan.  Administrative expense claims and priority tax claims (that is, the nonclassified priority claims) have not been classified and are excluded from the following classes, in accordance with the provisions of section 1123(a)(1) of the Bankruptcy Code.  The treatment accorded administrative expense claims and priority tax claims is set forth in Article 2 of the Plan.  Consistent with the provisions of section 1122 of the Bankruptcy Code, a claim or interest shall be deemed classified by the plan in a particular class only to the extent that the claim or interest qualifies within the description of that class, and shall be deemed classified in a different class to the extent that the claim or interest qualifies within the description of that different class.  A claim or interest is in a particular class only to the extent that the claim or interest is an Allowed Claim or allowed interest in that class, as the case may be.

7.1.1     Class A (priority claims) consists of all priority claims, if any, other than nonclassified priority claims.  Debtor does not believe that there are any Class A Claims.

7.1.2     Class B1 (secured claim) consists of the secured claim of Santa Clara County Tax Collector.

7.1.3     Class B2 (secured claim) consists of the secured claim of Sterling Savings Bank, Successor in Interest by Merger to Sonoma National Bank.

7.1.4     Class B3 (secured claim) consists of the secured claim of Capital Access Group guaranteed by the United States of America Small Business Administration.

---

[3] The majority of this cash flow was expended in the payment of a utilities bill for the last three months.

PINNACLE LAW GROUP LLP
425 CALIFORNIA STREET
SUITE 1800
SAN FRANCISCO, CA 94104
(415) 394-5700

5181.001

18

DEBTOR'S SECOND AMENDED
DISCLOSURE STATEMENT

7.1.5     (a)     Class C1 (general unsecured claims) consists of all unsecured claims other than nonclassified priority claims and the disputed claim of Arlene Stevens.

                   (b)     Class C2 (disputed unsecured claim of Arlene Stevens) consists of the disputed unsecured claim of Arlene Stevens.

7.1.6    Class D (equity interests) consists of the shareholder interests in the Debtor.

7.2     Impairment. Under the terms of the plan, all Allowed Claims (except Class A) and Allowed Interests are impaired.

TREATMENT OF CLAIMS

7.3     Class A (Priority other than Priority Non-Classified Claims). The holders of Class A Claims, if any, shall be paid in full on the Effective Date.

7.4     Class B1. The holder of the Class B1 Claim shall be paid to the extent of the Allowed amount thereof as follows: the holder of such claims will receive on account of such claim regular installment payments in cash --

              (i) of a total value, as of the effective date of the plan, equal to the allowed amount of such claim (simple interest shall be paid at the rate of 3% per annum);

              (ii) commencing on the Effective Date and continuing over a period ending not later than September 22, 2014.

The holder of the Class B1 Claim shall be free to enforce its state law remedies to foreclose its Allowed Secured Claim if not paid as provided herein.

7.5     Class B2. The holder of the Class B2 Claim shall receive full payment of its Allowed Secured Claim as follows: Monthly payments of contract interest on the principal amount thereof for a period of thirty six months commencing on the Effective Date; the balance owing on the Claim shall be paid in full no later than November 15, 2013. Pending payment in full as provided herein, the holder of the Class B1 Claim shall retain its lien against the Real Property. The holder of the Class B2 Claim shall be free to enforce its state law remedies to

PINNACLE LAW GROUP LLP
425 CALIFORNIA STREET
SUITE 1800
SAN FRANCISCO, CA 94104
(415) 394-5700

foreclose its Allowed Secured Claim if not paid in full as provided herein.

7.6     Class B3.   The holder of the Class B3 Claim shall receive full payment of its Allowed Secured Claim as follows:  Monthly payments of contract interest on the sum of $417,237 (the extent to which its claim is an Allowed Secured Claim) for a period of thirty six months commencing on the Effective Date; the balance owing on the Claim ($417,237) shall be paid in full no later than November 15, 2013.  Pending payment in full as provided herein, the holder of the Class B2 Claim shall retain its lien against the Real Property (to the extent of $417,237).   In addition, upon payment in full to the holder of the Class B2 Claim, the balance of the Attached Funds shall be turned over to the holder of the Class B3 Claim on account of its Allowed Unsecured Claim.  The holder of the Class B3 Claim shall be free to enforce its state law remedies to foreclose its Allowed Secured Claim if not paid as provided herein.

7.7     (a)     Class C1.  The holders of Class C1 Claims shall receive payment on account of their Allowed Claims as follows:  ten per cent (10%) of the amount thereof no later than November 15, 2013.

(b)     Class C2.  The holder of the disputed Class C2 Claim shall receive payment on account of her Allowed Claims as follows:  ten per cent (10%) of the amount thereof no later than November 15, 2013.

7.8     Class D (Interests).  The sole Class D Interest Holder shall retain his shareholder interest in the Debtor which is impaired under the Plan.

EXECUTORY CONTRACTS AND UNEXPIRED LEASES

7.9     Assumptions/Rejections Generally.  Except as otherwise provided in the Plan or in any contract, instrument, release, indenture or other agreement or document entered into in connection with the Plan, on the Effective Date, pursuant to section 365 of the Bankruptcy Code, the Debtor shall assume/reject the unexpired leases and/or executory contracts, as to which, Debtor is not in default, as indicated below:

/ / /

PINNACLE LAW GROUP LLP
425 CALIFORNIA STREET
SUITE 1800
SAN FRANCISCO, CA 94104
(415) 394-5700

5181.001

20

DEBTOR'S SECOND AMENDED
DISCLOSURE STATEMENT

Case: 09-58098    Doc# 74-1    Filed: 08/09/10    Entered: 08/09/10 09:34:26    Page 20
of 32

To the extent they are deemed to be executory contracts or unexpired leases, the following described non-residential tenancies of the Real Property commonly known as all land and improvements situated at 1010 Corporation Way Palo Alto, CA 94303-4304 shall be assumed:

| Tenant | Lessor | Rent | Lease Termination Date |
|--------|--------|------|------------------------|
| KMTP-TV | Debtor | $ 2,500/mo. | Month-to-month |
| New Tang Dynasty TV | Debtor | $ 3,172/mo. | Month-to-month |
| Epoch Times | Debtor | $ 1,710/mo. | Month-to-month |

Each contract or lease assumed pursuant to Section 5.2 shall be assumed only to the extent that any such contract or lease constitutes an executory contract or unexpired lease within the meaning of 11 U.S.C. §365.

7.10    Approval of Assumptions. The Confirmation Order shall constitute an order of the Bankruptcy Court approving the assumptions/rejection described in Section 5.2, pursuant to section 365 of the Bankruptcy Code.

7.11    Bar Date for Lease Rejection Claims. The last date to file a proof of claim arising from a rejected lease shall be the Effective Date. The Debtor does not contemplate any lease rejection claims.

8.    LEGAL PROCEEDINGS

There have been no legal proceedings during the pendency of this case which have had any material impact on the Debtor's reorganization effort.

9.    CASH REQUIREMENTS AND ADMINISTRATIVE EXPENSES

The amount and source of cash to be paid upon confirmation of the plan or its effective date is set forth in Section 14 below. The unpaid administrative expenses as of the Confirmation Date are estimated to be $0.

10.    AVOIDANCE ACTIONS AND OTHER LITIGATION

Debtor and Debtor's counsel are not aware of any potential actions which may be cognizable under 11 U.S.C. §§544, 545, 546, 547, 548, 549 and/or 550.

/ / /

PINNACLE LAW GROUP LLP
425 CALIFORNIA STREET
SUITE 1800
SAN FRANCISCO, CA 94104
(415) 394-5700

5181.001

21

DEBTOR'S SECOND AMENDED
DISCLOSURE STATEMENT

Case: 09-58098    Doc# 74-1    Filed: 08/09/10    Entered: 08/09/10 09:34:26    Page 21 of 32

## 11.     LIQUIDATION ANALYSIS

As set forth above, this case was filed to stop the foreclosure by the holder of the first deed of trust.  If this case converted to Chapter 7, it is likely that the Chapter 7 Trustee would pursue the sale of the Real Property at a price not likely to satisfy Sterling, failing which, Sterling would be permitted to foreclose on its security.  The appraisal of Colliers International of San Jose submitted by Sterling determined the value of the property to be $2.8 million - $2.15 million if the property were to be sold within a 180 day period.  The Amended Plan is premised upon this reduced value of $2.8 million and a liquidation value of $2.15 million in the event of a forced sale within 180 days.  Under the circumstances and for the reasons set forth above, Debtor believes that liquidation at this time is not a sensible alternative for the holder of the second deed of trust and unsecured creditors.

## 12.     MANAGEMENT EMPLOYMENT AND COMPENSATION

Debtor's current management is as follows:

| Name | Title | Current Annual Compensation |
|------|-------|-----------------------------|
| Booker T. Wade | Chief Executive Officer, President and sole shareholder | $0.00 |

It is anticipated that Mr. Wade will remain in his present position with the same compensation, subject to reasonable increases, following Plan confirmation.  The Debtor intends to hire a person as building manager whose principal function will be soliciting tenants.  His starting salary will be $3,000.  Except as herein set forth, there is no other compensation of the Debtor's management, disclosure of which information is required by 11 U.S.C. § 1129(a)(5).

## 13.     TAX CONSEQUENCES

Debtor does not anticipate any adverse tax consequences arising as a result of the Plan, the sale of the Real Property or the events occurring prior thereto which will interfere with Debtor's performance of the Plan.

PINNACLE LAW GROUP LLP
425 CALIFORNIA STREET
SUITE 1800
SAN FRANCISCO, CA 94104
(415) 394-5700

IN ANY EVENT, HOLDERS OF CLAIMS AND OTHER INTERESTED PERSONS SHOULD CONSULT THEIR OWN TAX COUNSEL TO DETERMINE THE TAX CONSEQUENCES UPON THEM, IF ANY, ARISING FROM THE PLAN OR THE EVENTS PRIOR THERETO.

    14.    VOTING

As provided in 11 U.S.C. §1126, each holder of an Allowed Claim in an impaired Class that retains or receives property under the Plan shall be entitled to vote separately to accept or reject the Plan and indicate such vote on a duly executed and delivered ballot. Each holder of an Allowed Claim in an impaired Class that does not retain or receive any property under the Plan is deemed to have rejected the Plan. The designation of Classes as "impaired" or "unimpaired" is set forth in Sections 11.6 of the Plan. No holder of an Allowed Claim in an unimpaired Class is entitled to vote to accept or reject the Plan in its capacity as a holder of such Claim.

If any impaired Class does not accept the Plan by the requisite statutory majorities provided in sections 1126(c) or 1126(d) of the Bankruptcy Code, as applicable, or if any impaired Class is deemed to have rejected the Plan, the Debtor reserves the right (a) to undertake to have the Bankruptcy Court confirm the Plan under section 1129(b) of the Bankruptcy Code, and (b) to amend the Plan as necessary to obtain entry of the Confirmation Order.

Section 1126 provides the requisite voting majorities, as follows:

(c) A class of claims has accepted a plan if such plan has been accepted by creditors, other than any entity designated under subsection (e) of this section, that hold at least two-thirds in amount and more than one-half in number of the allowed claims of such class held by creditors, other than any entity designated under subsection (e) of this section, that have accepted or rejected such plan.

(d) A class of interests has accepted a plan if such plan has been accepted by holders of such interests, other than any entity designated under subsection (e) of this section, that hold at least two-thirds in amount of the allowed interests of such

PINNACLE LAW GROUP LLP
425 CALIFORNIA STREET
SUITE 1800
SAN FRANCISCO, CA 94104
(415) 394-5700

5181.001                  23                DEBTOR'S SECOND AMENDED
DISCLOSURE STATEMENT

Case: 09-58098   Doc# 74-1   Filed: 08/09/10   Entered: 08/09/10 09:34:26   Page 23 of 32

1  class held by holders of such interests, other than any entity designated under

2  subsection (e) of this section, that have accepted or rejected such plan.

3  Dated: August 9, 2010                TV-32 DIGITAL VENTURES INC.

4

5                                       By: /s/ Booker T. Wade
                                         BOOKER T. WADE
6                                        Designated Responsible Person

7  Submitted By:

8  PINNACLE LAW GROUP LLP

9  By:/s/ Matthew J. Shier
       MATTHEW J. SHIER
10     Attorneys for Debtor

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

PINNACLE LAW GROUP LLP
425 CALIFORNIA STREET
SUITE 1800
SAN FRANCISCO, CA 94104
(415) 394-5700

28  5181.001                           24        **DEBTOR'S SECOND AMENDED
                                                 DISCLOSURE STATEMENT**

EXHIBIT A

## TV 32 DIGITAL VENTURES INC.
### Statements of Revenues, Expenses & Cash Flow
#### Year 1

| | Nov-10 | Dec-10 | Jan-10 | Feb-10 | Mar-10 | Apr-10 | May-10 | Jun-10 | Jul-10 | Aug-10 | Sep-10 | Oct-10 | Totals |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Revenues** | | | | | | | | | | | | | |
| Leasing | | | | | | | | | | | | | |
| New Tang | 3,175 | 3,175 | 3,175 | 3,175 | 3,175 | 3,175 | 3,175 | 3,175 | 3,175 | 3,175 | 3,175 | 3,175 | 38,100 |
| Epoch Times | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 24,000 |
| KMTP | 10,000 | 10,000 | 10,000 | 15,000 | 15,000 | 10,000 | 15,000 | 12,500 | 12,500 | 12,500 | 12,500 | 12,500 | 147,500 |
| 2-Room Unit | 350 | 350 | 350 | 350 | 350 | 350 | 450 | 450 | 450 | 450 | 450 | 450 | 4,800 |
| Sound of Hope | 650 | 650 | 650 | 650 | 650 | 650 | 700 | 700 | 700 | 700 | 700 | 700 | 8,100 |
| College of Palo Alto | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 24,000 |
| 2d Floor Tenants | 0 | 0 | 4,000 | 4,000 | 4,000 | 4,000 | 13,125 | 13,125 | 13,125 | 13,125 | 13,125 | 13,125 | 94,750 |
| **Net Revenues** | 18,175 | 18,175 | 22,175 | 27,175 | 27,175 | 22,175 | 36,450 | 33,950 | 33,950 | 33,950 | 33,950 | 33,950 | 341,250 |
| | | | | | | | | | | | | | |
| **Expenses** | | | | | | | | | | | | | |
| Administrative | | | | | | | | | | | | | |
| Bldg-Marktg Mgr | 0 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 33,000 |
| Accounting | 0 | 0 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 5,000 |
| Payroll Additives | 0 | 750 | 750 | 750 | 750 | 750 | 750 | 800 | 800 | 800 | 800 | 800 | 8,500 |
| Office Supl | 100 | 100 | 100 | 100 | 200 | 200 | 200 | 200 | 200 | 200 | 200 | 200 | 2,000 |
| Telecommunications | 100 | 100 | 100 | 100 | 100 | 100 | 100 | 100 | 100 | 100 | 100 | 100 | 1,200 |
| Brochures/materials | 500 | 100 | 100 | 100 | 100 | 100 | 500 | 100 | 100 | 100 | 100 | 100 | 2,000 |
| Advertising | 500 | 500 | 500 | 500 | 500 | 500 | 250 | 250 | 250 | 250 | 250 | 250 | 4,500 |
| UST Fees | 365 | 0 | 0 | 365 | 0 | 0 | 365 | 0 | 0 | 365 | 0 | 0 | 1,460 |
| Legal Fee | 0 | 0 | 0 | 0 | 2,500 | 2,500 | 2,500 | 2,500 | 2,500 | 2,500 | 2,500 | 2,500 | 20,000 |
| Misc | 100 | 100 | 100 | 100 | 100 | 100 | 100 | 100 | 100 | 100 | 100 | 100 | 1,200 |
| Equipment Purchases | | | | | | | | | | | | | |
| Internet | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Computer | 500 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 500 |
| Software | 250 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 250 |
| Building | | | | | | | | | | | | | |
| Insurance | | | | | | | | | | | | | |
| Current | 0 | 0 | 0 | 1,500 | 0 | 0 | 1,500 | 0 | 0 | 1,500 | 0 | 0 | 4,500 |
| Flood | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Property | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 6,500 | 6,500 |
| Utilities | 3,750 | 3,750 | 3,750 | 3,750 | 3,750 | 3,750 | 3,750 | 3,750 | 3,750 | 3,750 | 3,750 | 3,750 | 45,000 |
| Cleaning | 600 | 600 | 600 | 600 | 750 | 750 | 750 | 750 | 750 | 750 | 750 | 750 | 8,400 |
| Grounds | 350 | 350 | 350 | 350 | 350 | 350 | 400 | 400 | 400 | 400 | 400 | 400 | 4,500 |
| Supplies | 100 | 100 | 100 | 100 | 100 | 100 | 100 | 100 | 100 | 100 | 100 | 100 | 1,200 |
| Repairs | 350 | 350 | 350 | 350 | 350 | 500 | 500 | 500 | 500 | 1,000 | 1,000 | 1,000 | 6,750 |
| Upgrades | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 10,000 | 0 | 0 | 0 | 10,000 | 20,000 |
| Debt Service | | | | | | | | | | | | | |
| Sterling | 11,418 | 11,418 | 11,418 | 11,418 | 11,418 | 11,418 | 11,418 | 11,418 | 11,418 | 11,418 | 11,418 | 11,418 | 137,016 |
| SBA | 1,912 | 1,912 | 1,912 | 1,912 | 1,912 | 1,912 | 1,912 | 1,912 | 1,912 | 1,912 | 1,912 | 1,912 | 22,944 |
| Taxes - County | 1,600 | 1,600 | 1,600 | 1,600 | 1,600 | 1,600 | 1,600 | 1,600 | 1,600 | 1,600 | 1,600 | 1,600 | 19,194 |
| Taxes - City | 363 | 363 | 363 | 363 | 363 | 363 | 363 | 363 | 363 | 363 | 363 | 363 | 4,354 |
| Unsecured creditors | | | | | | | | | | | | | |
| | | | | | | | | | | | | | |
| **Total Expenses** | 22,857 | 25,092 | 25,592 | 27,457 | 28,342 | 28,492 | 30,557 | 38,342 | 28,342 | 30,707 | 28,842 | 45,342 | 359,968 |
| **Net Profit** | (4,682) | (6,917) | (3,417) | (282) | (1,167) | (6,317) | 5,893 | (4,392) | 5,608 | 3,243 | 5,108 | (11,392) | (18,718) |

### Statement of Cash Flow

| | Nov-10 | Dec-10 | Jan-10 | Feb-10 | Mar-10 | Apr-10 | May-10 | Jun-10 | Jul-10 | Aug-10 | Sep-10 | Oct-10 | Totals |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Beginning Cash | 10,000 | 15,318 | 8,400 | 4,983 | 14,701 | 13,533 | 12,216 | 18,109 | 13,716 | 19,324 | 22,567 | 27,674 | 16,282 |
| Cash from Operations | (4,682) | (6,917) | (3,417) | (282) | (1,167) | (6,317) | 5,893 | (4,392) | 5,608 | 3,243 | 5,108 | (11,392) | 0 |
| Cash from Investing | 10,000 | 0 | 0 | 10,000 | 0 | 5,000 | 0 | 0 | 0 | 0 | 0 | 0 | 25,000 |
| Cash from Lending | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Total Available Cash | 15,318 | 8,400 | 4,983 | 14,701 | 13,533 | 12,216 | 18,109 | 13,716 | 19,324 | 22,567 | 27,674 | 16,282 | 41,282 |
| | | | | | | | | | | | | | |
| **Net Cash Flow** | 15,318 | 8,400 | 4,983 | 14,701 | 13,533 | 12,216 | 18,109 | 13,716 | 19,324 | 22,567 | 27,674 | 16,282 | 41,282 |

TV32 2nd Amended Disclosure Statement - Enibit A page 1 of 3

## TV 32 DIGITAL VENTURES INC.
### Statements of Revenues, Expenses & Cash Flow
#### Year 2

| | Nov-11 | Dec-11 | Jan-11 | Feb-11 | Mar-11 | Apr-11 | May-11 | Jun-11 | Jul-11 | Aug-11 | Sep-11 | Oct-11 | Totals |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Revenues** | | | | | | | | | | | | | |
| Leasing | | | | | | | | | | | | | |
| New Tang | 3,175 | 3,175 | 3,875 | 3,875 | 3,875 | 3,875 | 3,875 | 3,875 | 3,875 | 3,875 | 3,875 | 3,875 | 45,100 |
| Epoch Times | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 24,000 |
| KMTP | 12,500 | 12,500 | 12,500 | 12,500 | 12,500 | 12,500 | 12,500 | 12,500 | 12,500 | 12,500 | 12,500 | 12,500 | 150,000 |
| 2-Room Unit | 450 | 450 | 450 | 450 | 450 | 450 | 450 | 450 | 450 | 450 | 450 | 450 | 5,400 |
| Sound of Hope | 650 | 650 | 650 | 650 | 650 | 650 | 700 | 700 | 700 | 700 | 700 | 700 | 8,100 |
| College of Palo Alto | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 24,000 |
| 2d Floor Tenant | 13,125 | 13,125 | 13,125 | 13,125 | 13,125 | 13,125 | 13,125 | 13,125 | 13,125 | 13,125 | 13,125 | 13,125 | 157,500 |
| | | | | | | | | | | | | | |
| **Net Revenues** | 33,900 | 33,900 | 34,600 | 34,600 | 34,600 | 34,600 | 34,650 | 34,650 | 34,650 | 34,650 | 34,650 | 34,650 | 414,100 |
| | | | | | | | | | | | | | |
| **Expenses** | | | | | | | | | | | | | |
| Administrative | | | | | | | | | | | | | |
| Bldg-Marktg Mgr | 0 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 5,500 |
| Accounting | 0 | 0 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 5,000 |
| Payroll Additives | | | | | | | | | | | | | 0 |
| Office Supp | 100 | 100 | 100 | 100 | 200 | 200 | 200 | 200 | 200 | 200 | 200 | 200 | 2,000 |
| Telecommunications | 100 | 100 | 100 | 100 | 100 | 100 | 100 | 100 | 100 | 100 | 100 | 100 | 1,200 |
| Brochures/materials | 500 | 100 | 100 | 500 | 100 | 100 | 100 | 100 | 100 | 250 | 100 | 100 | 2,000 |
| Advertising | 500 | 500 | 500 | 500 | 500 | 500 | 250 | 250 | 250 | 250 | 250 | 250 | 4,500 |
| UST Fees | 365 | 0 | 0 | 365 | 0 | 0 | 365 | 0 | 0 | 365 | 0 | 0 | 1,460 |
| Legal Fee | 0 | 2,500 | 0 | 2,500 | 0 | 2,500 | 0 | 2,500 | 0 | 2,500 | 0 | 2,500 | 15,000 |
| Misc | 100 | 100 | 100 | 100 | 100 | 100 | 100 | 100 | 100 | 100 | 100 | 100 | 1,200 |
| Equipment Purchases | | | | | | | | | | | | | |
| Internet | | | | | | | | | | | | | 0 |
| Computer | 500 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 500 |
| Software | 250 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 250 |
| Building | | | | | | | | | | | | | |
| Taxes — Current | 3,210 | 3,210 | 3,210 | 3,210 | 3,210 | 3,210 | 3,210 | 3,210 | 3,210 | 3,210 | 3,210 | 3,210 | 38,520 |
| Insurance | | | | | | | | | | | | | |
| Flood | 1,500 | 0 | 0 | 1,500 | 0 | 0 | 1,500 | 0 | 0 | 1,500 | 0 | 500 | 6,500 |
| Physical | 0 | 1,500 | 0 | 0 | 1,500 | 0 | 0 | 1,500 | 0 | 0 | 1,500 | 0 | 6,000 |
| Utilities | 4,000 | 4,000 | 4,000 | 4,000 | 4,000 | 4,000 | 4,000 | 4,000 | 4,000 | 4,000 | 4,000 | 4,000 | 48,000 |
| Cleaning | 600 | 600 | 600 | 600 | 750 | 750 | 750 | 750 | 750 | 750 | 750 | 750 | 8,400 |
| Grounds | 350 | 350 | 350 | 350 | 350 | 350 | 400 | 400 | 400 | 400 | 400 | 400 | 4,500 |
| Supplies | 100 | 100 | 100 | 100 | 100 | 100 | 100 | 100 | 100 | 100 | 100 | 100 | 1,200 |
| Repairs | 350 | 350 | 350 | 350 | 350 | 500 | 500 | 500 | 500 | 1,000 | 1,000 | 1,000 | 6,750 |
| Upgrades | 0 | 0 | 0 | 0 | 0 | 10,000 | 10,000 | 0 | 0 | 10,000 | 0 | 0 | 30,000 |
| Debt Service | | | | | | | | | | | | | |
| Sterling | 11,418 | 11,418 | 11,418 | 11,418 | 11,418 | 11,418 | 11,418 | 11,418 | 11,418 | 11,418 | 11,418 | 11,418 | 137,016 |
| SBA | 1,912 | 1,912 | 1,912 | 1,912 | 1,912 | 1,912 | 1,912 | 1,912 | 1,912 | 1,912 | 1,912 | 1,912 | 22,944 |
| Taxes - County | 1,600 | 1,600 | 1,600 | 1,600 | 1,600 | 1,600 | 1,600 | 1,600 | 1,600 | 1,600 | 1,600 | 1,600 | 19,194 |
| Taxes - City | 363 | 363 | 363 | 363 | 363 | 363 | 363 | 363 | 363 | 363 | 363 | 363 | 4,354 |
| Unsecured creditors | 0 | 0 | 0 | 0 | 0 | 0 | 10,000 | 0 | 0 | 10,000 | 0 | 0 | 20,000 |
| | | | | | | | | | | | | | |
| **Total Expenses** | 27,817 | 27,802 | 27,802 | 32,167 | 28,052 | 40,702 | 40,267 | 30,502 | 28,002 | 42,867 | 28,502 | 37,502 | 391,988 |
| | | | | | | | | | | | | | |
| **Net Profit** | 6,083 | 6,098 | 6,798 | 2,433 | 6,548 | (6,102) | (5,617) | 4,148 | 6,648 | (8,217) | 6,148 | (2,852) | 22,112 |

### Statement of Cash Flow

| | Nov-11 | Dec-11 | Jan-11 | Feb-11 | Mar-11 | Apr-11 | May-11 | Jun-11 | Jul-11 | Aug-11 | Sep-11 | Oct-11 | Totals |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Beginning Cash | 16,282 | 22,364 | 28,462 | 35,260 | 37,692 | 44,240 | 38,138 | 32,520 | 36,668 | 43,316 | 35,098 | 41,246 | 38,394 |
| Cash from Operations | 6,083 | 6,098 | 6,798 | 2,433 | 6,548 | (6,102) | (5,617) | 4,148 | 6,648 | (8,217) | 6,148 | (2,852) | 38,394 |
| Cash from Investing | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Cash from Lending | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Total Available Cash | 22,364 | 28,462 | 35,260 | 37,692 | 44,240 | 38,138 | 32,520 | 36,668 | 43,316 | 35,098 | 41,246 | 38,394 | 38,394 |
| | | | | | | | | | | | | | |
| Net Cash Flow | 22,364 | 28,462 | 35,260 | 37,692 | 44,240 | 38,138 | 32,520 | 36,668 | 43,316 | 35,098 | 41,246 | 38,394 | 38,394 |

## TV 32 DIGITAL VENTURES INC.
### Statements of Revenues, Expenses & Cash Flow
#### Year 3

| | Nov-12 | Dec-12 | Jan-12 | Feb-12 | Mar-12 | Apr-12 | May-12 | Jun-12 | Jul-12 | Aug-12 | Sep-12 | Oct-12 | Totals |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Revenues** | | | | | | | | | | | | | |
| Leasing | | | | | | | | | | | | | |
| New Tang | 4,500 | 4,500 | 4,500 | 4,500 | 4,500 | 4,500 | 4,500 | 4,500 | 4,500 | 4,500 | 4,500 | 4,500 | 54,000 |
| Epoch Times | 2,750 | 2,750 | 2,750 | 2,750 | 2,750 | 2,750 | 2,750 | 2,750 | 2,750 | 2,750 | 2,750 | 2,750 | 33,000 |
| KMTP | 15,000 | 15,000 | 15,000 | 15,000 | 15,000 | 15,000 | 15,000 | 15,000 | 15,000 | 15,000 | 15,000 | 15,000 | 180,000 |
| 2-Room Unit | 600 | 600 | 600 | 600 | 600 | 600 | 600 | 600 | 600 | 600 | 600 | 600 | 7,200 |
| Sound of Hope | 1,200 | 1,200 | 1,200 | 1,200 | 1,200 | 1,200 | 1,200 | 1,200 | 1,200 | 1,200 | 1,200 | 1,200 | 14,400 |
| College of Palo Alto | 4,000 | 4,000 | 4,000 | 4,000 | 4,000 | 4,000 | 4,000 | 4,000 | 4,000 | 4,000 | 4,000 | 4,000 | 48,000 |
| 2d Floor Tenant | 15,000 | 15,000 | 15,000 | 15,000 | 15,000 | 15,000 | 15,000 | 15,000 | 15,000 | 15,000 | 15,000 | 15,000 | 180,000 |
| **Net Revenues** | 43,050 | 43,050 | 43,050 | 43,050 | 43,050 | 43,050 | 43,050 | 43,050 | 43,050 | 43,050 | 43,050 | 43,050 | 516,600 |
| **Expenses** | | | | | | | | | | | | | |
| Administrative | | | | | | | | | | | | | |
| Bldg-Marktg Mgr | 600 | 600 | 600 | 600 | 600 | 600 | 600 | 600 | 600 | 600 | 600 | 600 | 7,200 |
| Accounting | 0 | 0 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 5,000 |
| Payroll Additives | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Office Supl | 100 | 100 | 100 | 100 | 200 | 200 | 200 | 200 | 200 | 200 | 200 | 200 | 2,000 |
| Telecommunications | 100 | 100 | 100 | 100 | 100 | 100 | 100 | 100 | 100 | 100 | 100 | 100 | 1,200 |
| Brochures/materials | 500 | 100 | 100 | 100 | 100 | 100 | 500 | 100 | 100 | 100 | 100 | 100 | 2,000 |
| Advertising | 500 | 500 | 500 | 500 | 500 | 500 | 250 | 250 | 250 | 250 | 250 | 250 | 4,500 |
| UST Fees | 365 | 0 | 0 | 365 | 0 | 0 | 365 | 0 | 0 | 365 | 0 | 0 | 1,460 |
| Legal Fee | 2,500 | 2,500 | 2,500 | 2,500 | 2,500 | 2,500 | 2,500 | 2,500 | 2,500 | 2,500 | 2,500 | 2,500 | 30,000 |
| Misc | 100 | 100 | 100 | 100 | 100 | 100 | 100 | 100 | 100 | 100 | 100 | 100 | 1,200 |
| Equipment Purchases | | | | | | | | | | | | | |
| Internet | 500 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 500 |
| Computer | 250 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 250 |
| Software | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Building | | | | | | | | | | | | | |
| Insurance | | | | | | | | | | | | | |
| Taxes | | | | | | | | | | | | | |
| Current | 3,300 | 3,300 | 3,300 | 3,300 | 3,300 | 3,300 | 3,300 | 3,300 | 3,300 | 3,300 | 3,300 | 3,300 | 39,600 |
| Flood | 1,500 | 0 | 0 | 1,500 | 0 | 0 | 1,500 | 0 | 0 | 1,500 | 0 | 0 | 6,000 |
| Physical | | | | | | | | | | | | 6,500 | 6,500 |
| Utilities | 4,250 | 4,250 | 4,250 | 4,250 | 4,250 | 4,250 | 4,250 | 4,250 | 4,250 | 4,250 | 4,250 | 4,250 | 51,000 |
| Cleaning | 600 | 600 | 600 | 600 | 750 | 750 | 750 | 750 | 750 | 750 | 750 | 750 | 8,400 |
| Grounds | 350 | 350 | 350 | 350 | 350 | 350 | 400 | 400 | 400 | 400 | 400 | 400 | 4,500 |
| Supplies | 100 | 100 | 100 | 100 | 100 | 100 | 100 | 100 | 100 | 100 | 100 | 100 | 1,200 |
| Repairs | 350 | 350 | 350 | 350 | 350 | 500 | 500 | 500 | 500 | 1,000 | 1,000 | 1,000 | 6,750 |
| Upgrades | | 10,000 | | | | | | | | | | | 10,000 |
| Debt Service | | | | | | | | | | | | | |
| Sterling | 11,418 | 11,418 | 11,418 | 11,418 | 11,418 | 11,418 | 11,418 | 11,418 | 11,418 | 11,418 | 11,418 | 11,418 | 137,016 |
| SBA | 1,912 | 1,912 | 1,912 | 1,912 | 1,912 | 1,912 | 1,912 | 1,912 | 1,912 | 1,912 | 1,912 | 1,912 | 22,944 |
| Taxes - County | 1,600 | 1,600 | 1,600 | 1,600 | 1,600 | 1,600 | 1,600 | 1,600 | 1,600 | 1,600 | 1,600 | 1,600 | 19,194 |
| Taxes - City | 363 | 363 | 363 | 363 | 363 | 363 | 363 | 363 | 363 | 363 | 363 | 363 | 4,354 |
| Unsecured creditors | 2,100 | 2,100 | 2,100 | 2,100 | 2,100 | 2,100 | 2,100 | 2,100 | 2,100 | 2,100 | 2,100 | 2,100 | 25,200 |
| **Total Expenses** | 33,357 | 40,342 | 30,842 | 32,707 | 31,092 | 31,242 | 33,307 | 31,042 | 31,042 | 33,407 | 31,542 | 38,042 | 397,968 |
| **Net Profit** | 9,693 | 2,708 | 12,208 | 10,343 | 11,958 | 11,808 | 9,743 | 12,008 | 12,008 | 9,643 | 11,508 | 5,008 | 118,632 |
| **Statement of Cash Flow** | | | | | | | | | | | | | |
| Beginning Cash | 38,394 | 48,086 | 50,794 | 63,002 | 73,344 | 85,302 | 97,110 | 106,852 | 118,860 | 130,868 | 140,510 | 152,018 | 157,026 |
| Cash from Operations | 9,693 | 2,708 | 12,208 | 10,343 | 11,958 | 11,808 | 9,743 | 12,008 | 12,008 | 9,643 | 11,508 | 5,008 | 0 |
| Cash from Investing | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Cash from Lending | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Total Available Cash | 48,086 | 50,794 | 63,002 | 73,344 | 85,302 | 97,110 | 106,852 | 118,860 | 130,868 | 140,510 | 152,018 | 157,026 | 157,026 |
| Net Cash Flow | 48,086 | 50,794 | 63,002 | 73,344 | 85,302 | 97,110 | 106,852 | 118,860 | 130,868 | 140,510 | 152,018 | 157,026 | 157,026 |

Case: 09-58098    Doc# 74-1    Filed: 08/09/10    Entered: 08/09/10 09:34:26    Page 28 of 32

EXHIBIT B

# Northern District of California
# Claims Register

## 09-58098 TV-32 Digital Ventures Inc.

**Judge:** Arthur S. Weissbrodt    **Chapter:** 11
**Office:** San Jose    **Last Date to file claims:** 01/26/2010
**Trustee:**    **Last Date to file (Govt):**

| | | |
|---|---|---|
| *Creditor:* (10352821)<br>Internal Revenue Service<br>P O Box 21126<br>Philadelphia, P A 19114 | **Claim No: 1**<br>*Original Filed Date:* 10/16/2009<br>*Original Entered Date:* 10/16/2009 | *Status:*<br>*Filed by:* CR<br>*Entered by:* Smith, Mikeal<br>*Modified:* |

| |
|---|
| Unsecured claimed: $200.00 |
| Secured claimed: $0.00 |
| Priority claimed: $400.00 |
| **Total claimed: $600.00** |

| |
|---|
| *History:* |
| Details   1-1   10/16/2009 Claim #1 filed by Internal Revenue Service, total amount claimed: $600 (Smith, Mikeal ) |
| *Description:* |
| *Remarks:* |

| | | |
|---|---|---|
| *Creditor:* (10334191)   History<br>City of Palo Alto<br>Utilities Department<br>250 Hamilton Ave<br>Palo Alto, CA 94301 | **Claim No: 2**<br>*Original Filed Date:* 10/26/2009<br>*Original Entered Date:* 11/03/2009 | *Status:*<br>*Filed by:* CR<br>*Entered by:* ed,<br>*Modified:* |

| |
|---|
| Unsecured claimed: $16689.91 |
| **Total claimed: $16689.91** |

| |
|---|
| *History:* |
| Details   2-1   10/26/2009 Claim #2 filed by City of Palo Alto, total amount claimed: $16689.91 (ed) |
| *Description:* |
| *Remarks:* |

| | | |
|---|---|---|
| *Creditor:* (10418824)<br>Santa Clara County<br>Tax Collector's Office<br>70 West Hedding Street<br>East Wing, 6th Floor<br>San Jose, CA 95110 | **Claim No: 3**<br>*Original Filed Date:* 12/30/2009<br>*Original Entered Date:* 12/30/2009 | *Status:*<br>*Filed by:* CR<br>*Entered by:* Nichols, Deborah<br>*Modified:* |

| |
|---|
| Secured claimed: $69422.62 |
| **Total claimed: $69422.62** |

TV32 2nd Amended Disclosure Statement - Ehibit B page 1 of 3

| History: | | | |
|---|---|---|---|
| Details | 3-1 | 12/30/2009 Claim #3 filed by Santa Clara County, total amount claimed: $69422.62 (Nichols, Deborah ) | |
| Description: | | | |
| Remarks: | | | |

---

| Creditor: (10334198)<br>Arlene D. Stevens<br>3575 Tripp Road<br>Woodside, CA 94062 | Claim No: 4<br>*Original Filed Date*: 01/25/2010<br>*Original Entered Date*: 01/25/2010 | Status:<br>*Filed by:* CR<br>*Entered by:* Healy, William<br>*Modified:* |
|---|---|---|

| Unsecured claimed: $3767201.00 |
|---|
| **Total**     **claimed: $3767201.00** |

| History: | | |
|---|---|---|
| Details | 4-1 | 01/25/2010 Claim #4 filed by Arlene D. Stevens, total amount claimed: $3767201 (Healy, William ) |
| Description: | | |
| Remarks: | | |

---

| Creditor: (10632795)<br>Sterling Savings Bank | Claim No: 5<br>*Original Filed Date*: 01/26/2010<br>*Original Entered Date*: 01/26/2010<br>*Last Amendment Filed:* 01/28/2010<br>*Last Amendment Entered:* 01/28/2010 | Status:<br>*Filed by:* CR<br>*Entered by:* Stevenson, Rachel<br>*Modified:* 02/01/2010 |
|---|---|---|

| Secured claimed: $2126159.44 |
|---|
| **Total**     **claimed: $2126159.44** |

| History: | | |
|---|---|---|
| Details | 5-1 | 01/26/2010 Claim #5 filed by Sterling Savings Bank, total amount claimed: $2126159.44 (myt) |
| Details | 5-2 | 01/28/2010 Amended Claim #5 filed by Sterling Savings Bank, total amount claimed: $2126159.44 (myt) |

| Description: (5-2) ERROR: AMENDS PREVIOUS CLAIM. CLAIM NUMBER NOT LISTED ON PDF (myt) |
|---|
| Remarks: (5-1) ERROR: ADDRESS NOT ENTERED (myt)<br>(5-2) ERROR: ADDRESS NOT ENTERED (myt) |

---

| Creditor: (10634307)<br>Franchise Tax Board<br>Bankruptcy Section MS A340<br>Franchise Tax Board<br>PO Box 2952<br>Sacramento CA 95812-2952 | Claim No: 6<br>*Original Filed Date*: 01/26/2010<br>*Original Entered Date*: 01/26/2010 | Status:<br>*Filed by:* CR<br>*Entered by:* ps<br>*Modified:* |
|---|---|---|

| Unsecured claimed: | $205.33 |
|---|---|
| Priority    claimed: | $1710.71 |
| **Total**     **claimed:** | **$1916.04** |

| History: |
|---|

| Details | 6-1 | 01/26/2010 Claim #6 filed by Franchise Tax Board, total amount claimed: $1916.04 (ps) |
| --- | --- | --- |
| Description: | | |
| Remarks: | | |

## Claims Register Summary

**Case Name:** TV-32 Digital Ventures Inc.
**Case Number:** 09-58098
**Chapter:** 11
**Date Filed:** 09/23/2009
**Total Number Of Claims:** 6

| | Total Amount Claimed | Total Amount Allowed |
| --- | --- | --- |
| **Unsecured** | $3784296.24 | |
| **Secured** | $2195582.06 | |
| **Priority** | $2110.71 | |
| **Unknown** | | |
| **Administrative** | | |
| **Total** | **$5981989.01** | **$0.00** |

| PACER Service Center | | | |
| --- | --- | --- | --- |
| **Transaction Receipt** | | | |
| 08/05/2010 09:48:02 | | | |
| **PACER Login:** | pg0201 | **Client Code:** | |
| **Description:** | Claims Register | **Search Criteria:** | 09-58098 Filed or Entered From: 7/16/2000 Filed or Entered To: 1/1/2011 |
| **Billable Pages:** | 1 | **Cost:** | 0.08 |