Booker T. Wade Jr.
1010 Corporation Way
Palo Alto, CA 94303
415 378 6250

In Propria Persona

# UNITED STATES BANKRUPCTY COURT
## NORTHERN DISTRICT OF CALIFORNIA
### SAN JOSE DIVISION

| | |
|---|---|
| In Re: | Bk. No. 09-58098 ASW |
| | Chapter 11 |
| TV-32 DIGITAL VENTURES, INC., a California Corporation, | |
| | Date: January 3, 2011 |
| Debtor | Time: 9:45 AM |
| | Place: 280 S. 1st St., San Jose, CA |
| | Ct Rm: 3020, 3rd Floor |
| | Before: Hon. Arthur S. Weissbrodt |

**BOOKER T. WADE'S STATUS CONFERENCE COUNTER STATEMENT**

Booker Wade (Wade), individually, on behalf of himself, hereby requests leave of this Court to present the statement that follows concerning the captioned matter. In its Pre Hearing Statement, the U.S. Small Business Administration has presented questions and issues concerning the status and orders arising out of a related action before the Santa Clara County Superior Court, entitled Arlene Stevens v. Booker Wade., Case No. 1-07-CV-090284 (State Proceeding). Wade is a party to that action and in that action represents himself in pro per. Wade's statement is needed herein to inform fully this Court.

This State Proceeding involves claims by Arlene Stevens [Stevens] and counter claims by Wade arising out of their 25-year business and non-marital personal relationships. On January 21-22, 2009, Presiding Judge Jaime Jacobs-May mediated and supervised the resolution of the property division claims, culminating in a settlement agreement [Settlement] that was recited on the record before the Presiding Judge on January 22, 2009 pursuant to C.C.P. Section 664.6. A transcript of

the Settlement previously was presented to this Court. Under the Settlement, the Debtor and the Debtor's property were assigned to Wade.

In its Pre Hearing Statement, the SBA takes the position that under the Settlement Wade is required to extinguish the personal guarantee of Stevens, or it will not support the Debtor's reorganization plan. The SBA confuses its role. Interpretation of the Settlement is the prerogative of the state court or in limited circumstances, the arbitrator, not the SBA. Also, the SBA argues that the arbitrator has mandated that Wade secure a release of the Stevens guarantee.

The SBA position is facial. It focuses on the single word "conditioned" in one memorandum of arbitrator, ignoring his full memorandum and his specific ruling made at the hearing rejecting the very issue advanced by SBA. The memorandum concludes that a release of the Stevens guarantee was merely contemplated. Further, at the hearing on the issue before the arbitrator, the SBA position was specifically argued by Stevens and the arbitrator specifically rejected it. Instead, the arbitrator "recommended" to this Court that the property be sold to protect Stevens from potential liability. The arbitrator was then unaware that the value of the property was less than the debt owed. It defies logic to assume that to protect Stevens, the arbitrator was demanding a deficiency sale which would harm Stevens.

The Settlement required that Wade and Stevens exercise good faith in its implementation Wade had the responsibility to seek refinancing of the property which could have terminated Stevens' contingent liability. Stevens frustrated Wade's efforts at refinancing and dissipated joint funds under her control and forfeited assets, all precluding Wade from refinancing and otherwise serving lenders' debt.

Days after the Settlement, Wade applied to both lenders to refinance the property. On or about February 12, 2008, Wade was scheduled to meet with officials at Sterling Bank to discuss the refinancing applications. Upon his arrival, Wade was advised by Sterling Bank that counsel for Stevens had written the bank and advised the Bank that Stevens was exercising her rights under banking privacy laws and had directed the bank not to discuss with Wade the refinancing. Stevens declined to withdraw her directive. Thereafter, the Bank advised Wade that the Bank could not process the refinance application. The Settlement is a contract and as Wade understands, it is fundamental contract law that the preclusion of the refinancing by Stevens is a frustration of purpose, excusing Wade's performance.

Palo Alto Condo: The Settlement required that the contested Palo Alto condo be sold and that net proceeds be shared 60/40 in Stevens favor and that carrying costs pending a sale be shared in the

same portions. Wade represents that sixteen months later, Stevens had failed to pay any portion of her 60% cost share and that he paid his and her portions until his funds were exhausted. Thereafter, on March 3, 2010, the condo went into foreclosure, causing Wade to lose any net equity that Wade could have used to service the Debtor's loans.

Wireless License: The Settlement required that a FCC wireless license for a new cellular telephone facility for nearby Portland, Oregon – controlled by Stevens - be sold and the proceeds shared. By May 2010, Stevens was unable to find a buyer and was unwilling to cause the facility to be construed as required by FCC regulations. Stevens then chose to forfeit the license, rather than sell the license to Wade. Her actions precluded Wade from securing equity that Wade would have used to service lenders' debt.

Secreted Funds: Subsequent to the Settlement, upon a state court order, Stevens disclosed that at the Settlement she had failed to disclose that she had placed $400,000 in contested funds in an account at First Republic Bank of Palo Alto. Her disclosure followed First Republic mistakenly delivering to Wade her bank statement. Stevens and Wade in 2005 pledged these funds as additional collateral to Sterling. Wade's share of these funds, now dissipated, would have been used to serve lenders' loans.

I declare under oath that the forgoing is true.

–

December 30, 2011

                                                  Respectfully submitted,
                                                  _____

                                                  /s/  Booker Wade

                                                  Booker Wade